UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| DAVID A. BRIGGS,                                  ) | |
|                          *Plaintiff*                  ) | |
| v.                                                                ) | Civil No. 08-05-B-W |
| MICHAEL J. ASTRUE,                          ) | |
| **Commissioner of Social Security,**     ) | |
|                          *Defendant*                 ) | |

### *REPORT AND RECOMMENDED DECISION*[1]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question of whether substantial evidence supports the commissioner's determination that the plaintiff, who alleges disability stemming from ischemic heart disease, back disorder, mood disorder, and anxiety disorder, is capable of making an adjustment to work existing in significant numbers in the national economy.  I recommend that the decision of the commissioner be vacated and the case remanded for further development.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff's adjustment disorder, cardiovascular disease, and polysubstance abuse in sustained remission were severe

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3).  The commissioner has admitted that the plaintiff has exhausted his administrative remedies.  The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office.  Oral argument was held before me on October 17, 2008, pursuant to Local Rule 16.3(a)(2)(C) requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

impairments, Finding 3, Record at 27; that his allegations regarding his limitations were not entirely credible for reasons set forth in the body of the decision, Finding 5, *id.*; that he retained the residual functional capacity ("RFC") to perform light exertion work that required no more than an occasional ability to climb, balance, stoop, kneel, crouch, or crawl, could interact appropriately with co-workers and supervisors but not with the public, was capable of short-demonstration work, and possessed no transferable skills, Finding 6, *id.*; that he had the RFC to perform substantially all of the full range of unskilled light work, including the jobs of assembler, small products I, assembler, small products II, and checker I, Finding 11, *id.*; that, based on an exertional capacity for light work and his age (younger individual between the ages of 45 and 49), education (limited), and work experience (no transferable skills), Rule 202.18, Appendix 2 to Subpart P, 20 C.F.R. § 404 (the "Grid"), would direct a conclusion of not disabled, Findings 8-12, *id.*; that his capacity for light work was substantially intact and had not been compromised by any nonexertional limitations and, accordingly, using Rule 202.18 as a framework for decision-making, he was not disabled, Finding 13, *id.*; and that he therefore was not under a disability at any time through the date of decision, Finding 14, *id.*[2] The Appeals Council declined to review the decision, *id.* at 6-9, making it the final determination of the commissioner, 20 C.F.R. §§ 404.981; 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as

---

[2] The plaintiff had acquired sufficient quarters of coverage to remain insured for purposes of SSD through the date of the decision. *See* Finding 1, Record at 26.

adequate to support the conclusion drawn.  *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work.  20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7.  The record must contain positive evidence in support of the commissioner's findings regarding the plaintiff's residual work capacity to perform such other work.  *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The plaintiff complains that the administrative law judge (i) failed to comply with regulatory requirements addressing determination of whether drug and alcohol abuse is material to a claim, (ii) failed to sustain his burden of establishing that there was other work in the economy that the plaintiff could perform, and (iii) made a credibility finding unsupported by substantial evidence.  *See* Plaintiff's Itemized Statement of Errors ("Statement of Errors") (Docket No. 12) at 14-28.  I agree that, on the basis of the first point of error, reversal and remand are warranted.  For the benefit of the parties on remand, I briefly discuss the two remaining points.

## I.  Discussion

### A.  Winning Point: Sustainability of Step 5 Finding

In his second point of error, the plaintiff complains that the administrative law judge transmitted a flawed RFC finding to a vocational expert present at his hearing, undermining reliance on the vocational expert's testimony to carry the commissioner's Step 5 burden.  *See id.* at 19-26. Specifically, the plaintiff complains that the administrative law judge:

1.      Purported to embrace the findings of Disability Determination Services ("DDS") non-examining consultants but omitted to transmit certain of their findings to the vocational expert, including a restriction to understanding and remembering simple instructions that would have ruled out the three jobs the vocational expert testified that a person with the plaintiff's profile could perform.  *See id*. at 20-24.

2.      Omitted any mention of the plaintiff's hearing loss.  *See id*. at 24-25.

3.      Minimized the impact of the plaintiff's physical impairments, particularly a back impairment that a treating physician's assistant indicated limited him to less than sedentary exertional capacity.  *See id*. at 25-26.

I agree that the administrative law judge erred in his handling of the question of whether the plaintiff was limited to performance of simple instructions, and that this error warrants reversal and remand.

The administrative law judge found the plaintiff capable, *inter alia*, of short-demonstration work, a conclusion for which he cited Exhibit 13F, a mental RFC assessment by DDS non-examining consultant Thomas A. Knox, Ph.D.  *See* Record at 24, 439-42.  In so doing, he appears to have equated Dr. Knox's findings that the plaintiff could "understand + remember simple instructions" and "carry out simple tasks in a normal schedule" with an ability to perform short-demonstration work.  *Compare id*. at 24 *with id*. at 441; *see also id*. at 25 (deeming opinions of Dr. Knox and DDS non-examining consultant Peter G. Allen, Ph.D., "generally consistent" with the opinion of expert who testified at hearing, Charles O. Tingley, Jr., Ph.D.), 265-66 (finding by Dr. Allen that plaintiff capable, *inter alia*, of "remember[ing] up to four-step tasks/instructions" and "focus[ing] on at least simple work for [a] normal workday/week"), 596

(testimony of Dr. Tingley that plaintiff did not appear to be functionally illiterate and was capable of at least short-term demonstration work).

Yet the two are not the same thing. A "short term demonstration" job is one requiring a "[s]hort demonstration only" to "learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." Appendix C, § II to the Dictionary of Occupational Titles (U.S. Dep't of Labor, 4th ed. rev. 1991) ("DOT") (addressing the specific vocational preparation, or "SVP," required to master a job). As this court has held, a restriction to simple instructions or simple tasks "appears to be more squarely addressed by the GED [General Educational Development] ratings" than by SVP ratings. *Hall-Grover v. Barnhart*, No. 03-239-P-C, 2004 WL 1529283, at *4 (D. Me. Apr. 30, 2004) (rec. dec., *aff'd* May 24, 2004).

All three of the jobs that the vocational expert identified in response to the administrative law judge's hypothetical question have GED reasoning levels of 2. *See* Record at 596-98; *see also* DOT §§ 222.687-010 (checker I), 706.684-022 (assembler, small products I), 739.687-030 (assembler, small products II). This court has previously held that a job with a GED reasoning level of 2, which requires a worker to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and "[d]eal with problems involving a few concrete variables in or from standardized situations[,]" Appendix C, § III to DOT, generally is beyond the capacity of a person limited to simple instructions or simple tasks, *see, e.g., Spearing v. Astrue*, No. 07-138-B-W, 2008 WL 2593790, at *3 (D. Me. June 30, 2008) (rec. dec., *aff'd* July 22, 2008); *Riley v. Astrue*, No. 06-95-B-W, 2007 WL 951424, at *4 (D. Me. Mar. 27, 2007) (rec. dec., *aff'd* Apr. 18, 2007). Hence, if one accepts that the plaintiff was limited to simple

5

instructions or simple tasks, he seemingly would be incapable of performing any of the three jobs identified by the vocational expert.[3]

The administrative law judge did not recognize that short-demonstration work is not the equivalent of performance of simple tasks or instructions and, accordingly, failed to consider whether the plaintiff was additionally limited to such tasks and/or instructions. Because the DOT suggests that a restriction to simple instructions or tasks precludes performance of the three jobs identified by the vocational expert, his error in conflating the SVP and GED concepts cannot be deemed harmless.[4]

While, in this case, the administrative law judge made an alternative finding, predicated on the Grid, that the plaintiff was not disabled, the error affects Grid analysis, as well. The appropriateness of reliance on the Grid in cases in which a claimant suffers from a nonexertional impairment depends on whether that impairment "significantly affects [a] claimant's ability to perform the full range of jobs" at the appropriate exertional level. *Heggarty v. Sullivan*, 947 F.2d 990, 996 (1st Cir. 1991) (citations and internal quotation marks omitted). If a nonexertional impairment is significant, the commissioner generally may not rely on the Grid to meet his Step

---

[3] At oral argument, counsel for the commissioner pointed out that in *Cooper v. Barnhart*, No. 04-222-P-S, 2005 WL 1231496 (D. Me. May 24, 2005) (rec. dec., *aff'd* June 23, 2005), this court rejected the claimant's contention that a GED reasoning level of 2 was inconsistent with a limitation to one- or two-step tasks. While that is true, *see id*. at *3, the claimant in *Cooper* unfortunately did not call to the court's attention a prior decision, *Flagg v. Barnhart*, No. 04-45-B-W, 2004 WL 2677208, at *5 (D. Me. Nov. 24, 2004) (rec. dec., *aff'd* Dec. 14, 2004), in which it had noted that a GED reasoning level of 2 is incompatible with a limitation to simple instructions. *Cooper* therefore is an anomaly, inconsistent with both prior and subsequent caselaw of this court on the point in question. At oral argument, counsel for the commissioner also argued that a limitation to unskilled work (that is, a lack of transferable skills, as found by the administrative law judge) reflects a limitation to the performance of simple instructions. However, the skill level of work bears on SVP, not on GED reasoning level. *See, e.g*., Social Security Ruling 00-4p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2008) ("SSR 00-4p"), at 245 ("Using the skill level definitions in 20 CFR 404.1568 and 416.968, unskilled work corresponds to an SVP of 1-2[.]"); *Hall v. Barnhart*, No. 03-299-P-C, 2004 WL 1896969, at *3 (D. Me. Aug. 25, 2004) (rec. dec., *aff'd* Sept. 21, 2004) ("[W]hether a job is skilled or unskilled does not speak directly to the question of whether it entails simple, repetitive tasks, which seemingly is more squarely addressed by the GED ratings.").

[4] While the administrative law judge asked Dr. Tingley whether the plaintiff was capable of "short demonstration work," he never asked him whether the plaintiff was limited to performing simple tasks or carrying out simple instructions. *See* Record at 596. Thus, Dr. Tingley's testimony did not contradict those findings of Drs. Allen and Knox.

5 burden but must employ other means, typically use of a vocational expert. *See, e.g., Ortiz v. Secretary of Health & Human Servs.*, 890 F.2d 520, 524 (1st Cir. 1989).[5] Even in cases in which a nonexertional impairment is determined to be significant, however, the commissioner may yet rely exclusively upon the Grid if "a non-strength impairment . . . has the effect only of reducing that occupational base marginally[.]" *Id*. "[A]though a nonexertional impairment can have a negligible effect, ordinarily the ALJ must back such a finding of negligible effect with the evidence to substantiate it, unless the matter is self-evident." *Seavey v. Barnhart,* 276 F.3d 1, 7 (1st Cir. 2001) (citation and internal quotation marks omitted). There is no evidence of record whether a limitation to simple instructions or simple tasks would have only a negligible effect on the occupational base for the full range of light work, and the matter is not otherwise self-evident.[6]

Turning to the plaintiff's second and third sub-points, asserting the mishandling of his hearing and back impairments, I find no error. The plaintiff describes his hearing loss as "well documented[,]" Statement of Errors at 24, yet he points to no results of testing establishing that he suffered from a medically determinable hearing impairment. Instead, all references to which he points are to his own self-reports to treating sources that he suffered such a problem and that it was sufficiently severe to have caused him to learn to read lips. *See id*. at 24-25; Record at 384,

---

[5] "Exertional capacity addresses an individual's limitations and restrictions of physical strength and defines the individual's remaining ability to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, and pulling." Social Security Ruling 96-9p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2008) ("SSR 96-9p"), at 156. "Nonexertional capacity considers any work-related limitations and restrictions that are not exertional." *Id*. "Therefore, a nonexertional limitation is an impairment-caused limitation affecting such capacities as mental abilities, vision, hearing, speech, climbing, balancing, stooping, kneeling, crouching, crawling, reaching, handling, fingering, and feeling." *Id.*

[6] At oral argument, counsel for the commissioner cited a case holding that a limitation to simple, repetitive, and routine tasks does not undermine reliance on the Grid. *See Allison v. Apfel*, No. 99-4090, 2000 WL 1276950, at *4 (6th Cir. Aug. 30, 2000). However, in *Allison*, the United States Court of Appeals for the Sixth Circuit equated a limitation to simple, repetitive, and routine tasks with "unskilled" work. *See id*. As noted above, this court has held otherwise.

429, 540, 576.[7]  Moreover, as counsel for the commissioner pointed out at oral argument, the plaintiff was noted on several occasions on examination to have no hearing loss.  *See, e.g.*, Record at 218 ("no hearing acuity loss"), 234 ("no hearing loss"), 298 ("Can hear voice without any difficulty.").  In any event, the plaintiff points to no evidence tending to suggest that the condition affected his capacity to work.  To the extent that the administrative law judge may have generously found that the plaintiff suffered from a medically determinable impairment precipitating hearing loss, he supportably found any such impairment non-severe.

The plaintiff also faults the administrative law judge for failing to fully consider the impact of his physical impairments, particularly his back impairment, on his ability to work.  *See* Statement of Errors at 25-26.  He argues that the administrative law judge misstated the medical evidence in characterizing an MRI test as demonstrating "multiple levels of disc bulging" and that the MRI evidence, properly understood, supports Hallack's assessment that he is limited to less than sedentary work.  *See id.*  These points are not well-taken.  At hearing, the plaintiff's counsel agreed with the administrative law judge that the MRI revealed multiple levels of disc bulging; counsel was unable to point to any opinion of a treating source that such disc bulging could cause the degree of pain that the plaintiff claimed it did.  *See* Record at 583.  The MRI, which the plaintiff underwent on August 29, 2002, fairly can be described as confirming the existence of nothing more than disc bulging or protrusion, although, at the L2-L3 level, it revealed "a small to moderate central subligamentous protrusion, which may reflect a small discrete herniation."  *See id.* at 314.  No herniation or nerve-root impingement was definitively noted.  *See id.*

---

[7] Mary Hallack, PAC, a treating physician's assistant, assessed the plaintiff as having limited hearing as a result of a congenital hearing loss.  Record at 540.  However, she pointed to no diagnostic study results, *see id.*, and her only progress note of record identifies no such results, *see id.* at 467.

The administrative law judge supportably rejected Hallack's RFC opinion on the basis that her report was a cursory, fill-in-the-blank form in which she failed to cite clinical observations, radiological studies, or medical testing that supported her conclusion.  *See id.* at 26, 538-41; *see also, e.g.*, 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion.  The better an explanation a source provides for an opinion, the more weight we will give that opinion.").

### B.  Remaining Points of Error

#### 1.  Materiality of Drug and Alcohol Abuse

The plaintiff's first point of error implicates a provision of the Contract with America Advancement Act of 1996 ("Contract with America") that "eliminated disability benefits where drug addiction or alcoholism was a contributing factor material to the Commissioner's determination of disability."  *Bartley v. Barnhart*, 117 Fed. Appx. 993, 994 (6th Cir. 2004) (citation and internal quotation marks omitted); *see also* 42 U.S.C. § 423(d)(2)(C).

That Contract with America directive, in turn, was incorporated into the agency's regulations, which provide in relevant part:

> (1) The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol.
>
> (2) In making this determination, we will evaluate which of your current physical and mental limitations, upon which we based our current disability determination, would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling.
>
> (i) If we determine that your remaining limitations would not be disabling, we will find that your drug addiction or alcoholism is a contributing factor material to the determination of disability.

> (ii) If we determine that your remaining limitations are disabling, you are disabled independent of your drug addiction or alcoholism and we will find that your drug addiction or alcoholism is not a contributing factor material to the determination of disability.

20 C.F.R. §§ 404.1535(b); 416.935(b).

The administrative law judge made no official finding that the plaintiff had been disabled at any time from his alleged date of onset of disability of October 15, 2000, *see* Record at 21, through the date of decision, July 14, 2006, or that drug or alcohol abuse was material to his claim, *see id.* at 26-28. Yet he stated in the body of his decision:

> The claimant suffers long-standing poly-substance abuse. This abuse is material to the claim. Prior to the claimant's sustained remission from contraband drug use and alcohol, the claimant suffered at worst marked impairment in the ability to maintain concentration, persistence and pace or, at best, the claimant suffered substance induced psychotic disorder, substance induced anxiety disorder and substance induced mood disorder; disorders which caused moderate restrictions in social functioning, in activities of daily living, and in the ability to maintain concentration[,] persistence and pace. Either way, once the claimant became sober, the claimant's adjustment disorder symptoms caused mild restrictions of daily living, moderate restrictions in social functioning, and moderate difficulties in maintaining concentration, persistence and pace.

*Id*. at 23-24 (citations omitted). The administrative law judge thereby implied that the plaintiff was disabled prior to a sustained remission in drug and alcohol abuse, but that the drug and alcohol abuse was material to his disability. He erred in failing to make a clear finding whether the plaintiff was disabled at any point subsequent to his alleged date of onset of disability before proceeding to consider whether drug or alcohol abuse was material to such a finding of disability. On remand, the administrative law judge should correct this error, determining first whether the plaintiff was disabled at any point during the relevant time period and, if so, whether drug and/or alcohol abuse was material to any such disability.

Nonetheless, this error, standing alone, does not independently justify reversal and remand. The evidence of record demonstrates that the plaintiff was a periodic binge drinker, *see,*

10

*e.g., id*. at 296, 412, that he was drinking heavily, in particular, for the period from early 2004 through October 2004, *see, e.g., id*. at 302, 587, and that he entered a sustained remission from use or drugs and alcohol as of October 2004, *see, e.g., id*. at 534, 567. There is substantial evidence of record that alcohol abuse was material to any disability in the sense that, when he was not abusing substances, his mental impairments fell into the mild to moderate range. *See, e.g., id*. at 443, 451, 453 (Psychiatric Review Technique Form ("PRTF") completed on January 20, 2005, by Dr. Knox finding that, at a time when substance-abuse addiction disorders were in remission, the plaintiff suffered moderate restrictions in activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace), 267, 277 (PRTF completed on June 8, 2004, by Dr. Allen finding, without reference to any substance-abuse addiction disorder, that plaintiff suffered mild restrictions in activities of daily living, mild to moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace), 587-88 (testimony of Dr. Tingley (i) that the plaintiff may have suffered from substance-induced psychotic disorder, substance-induced mood disorder, and/or substance-induced anxiety disorder, (ii) that he considered Dr. Knox's assessment of moderate restrictions accurate, although treatment notes subsequent to Dr. Knox's report indicated that the plaintiff had improved to the point that he was suffering only mild restrictions from his mental impairments, and (iii) that "[t]he notable point there is that as he moved away from substance abuse, his mood and thought processes improved considerably and are now stable").[8]

---

[8] As the plaintiff points out, *see* Statement of Errors at 21, a DDS examining consultant, Adrienne J. Butler, Ed.D., found in a report dated April 27, 2004, based in part on intelligence testing, that the plaintiff was "apt to have marked short-term verbal memory retrieval difficulties[,]" "marked attention and concentration difficulties and thus . . . difficulty sustaining task performance[,]" and moderate difficulties with social interaction and adaptation, *see* Record at 253. However, at the plaintiff's hearing, Dr. Tingley expressed the view that Dr. Butler had "missed the substance abuse area[,]" the plaintiff having denied to Dr. Tingley that he was then abusing substances, and that the plaintiff's then active substance abuse "might very well have contributed" to some of the cognitive difficulties that

11

### 2. Credibility Determination

The plaintiff finally assails the administrative law judge's adverse credibility determination, arguing that he exaggerated evidence concerning activities of daily living, that the evidence does not support the conclusion that those activities were "performed on a sustained, effective, independent and appropriate basis consistent with the demands of competitive work[,]" and that he erred as a matter of law in gleaning from abilities to undertake activities of daily living an ability to sustain full-time employment. *See* Statement of Errors at 26-28.

To the extent that the administrative law judge deemed the plaintiff's activities of daily living inconsistent with his claims of disabling pain and restriction and, therefore, damaging to his credibility, he committed no error. His findings that the plaintiff was able to maintain his prescription drug regimen, prepare his meals, shop, manage his limited finances, watch television, practice the guitar, socialize at will, attend AA meetings, maintain adequate hygiene, and use public transportation are supported by substantial evidence. *Compare* Record at 24 *with id*. at 117, 471, 486, 490, 496, 503-04, 568, 572-73, 575. Notably, as the administrative law judge observed, the plaintiff's testimony at hearing that he was more isolated after leaving a home program at Acadia Hospital was contradicted by contemporaneous progress notes of treating sources indicating that he was less isolated and getting out more often. *See id*. at 24; *compare id*. at 490, 503-04 *with id*. at 571. There is no basis on which to disturb this credibility finding. *See Frustaglia v. Secretary of Health & Human Servs.,* 829 F.2d 192, 195 (1st Cir. 1987) ("The credibility determination by the ALJ, who observed the claimant, evaluated his demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference, especially when supported by specific findings.").

---

Dr. Butler noted. *See id*. at 251, 592.

While, as the plaintiff points out, *see* Statement of Errors at 27-28, "a claimant's ability to participate in limited household chores, in and of itself, does not prove he has the ability to perform substantial gainful activity[,]" *Dedis v. Chater*, 956 F. Supp. 45, 54 (D. Mass. 1997), the administrative law judge predicated his RFC findings not solely on the plaintiff's activities of daily living but also on expert reports, *see* Record at 24; *compare, e.g., Chester v. Callahan*, 193 F.3d 10, 13 (1st Cir. 1999) (claimant's daily activities did not support finding that she could perform a full range of sedentary work when there was no evidence she engaged in activities while seated); *Rohrberg v. Apfel*, 26 F. Supp.2d 303, 309 (D. Mass. 1998) ("While the ALJ stated that the RFC determination was consistent with the medical evidence in the record, the RFC instead hinged on the ALJ's credibility determination.").

For these reasons, I discern no error in the credibility findings.

## II.  Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **VACATED** and the case **REMANDED** for further proceedings consistent herewith.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof.  A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 6th day of November, 2008.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge